**TUFF–N–RUMBLE Management, Inc., d/b/a Tuff City Records, Plaintiff,**

v.

**SUGARHILL MUSIC PUBLISHING INC., Sugar Hill Records, Ltd., Sugar Hill Records, Inc., Sugar Hill Music, Inc. and Sugar Hill Music Publishing, Ltd., Defendants.**

**No. 97 Civ. 7700(RWS).**

United States District Court, S.D. New York.

May 24, 1999.

Cobrin Gittes & Samuel, New York City, for plaintiff, by Oren Warshavsky, of counsel.

Liebowitz & Liebowitz, Englewood, NJ, for defendants, by William C. Rindone, Jr., of counsel.

OPINION

SWEET, District Judge.

Plaintiff Tuff–N–Rumble Management, Inc. ("Tuff") has moved (1) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the counterclaim for copyright interference asserted against it by defendants Sugarhill Music Publishing Inc., Sugar Hill Records, Ltd., Sugar Hill Records, Inc., Sugar Hill Music, Inc., and Sugar Hill Music Publishing, Ltd. (collectively, "Sugarhill"); and (2) for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing Sugarhill's counterclaims for tortious interference with contract and defamation, and Sugarhill's affirmative defense of prior transfer. Defendants have moved to strike Tuff's First Amended Complaint.

For the reasons set forth below, Tuff's motions are granted in part and denied in part, and Sugarhill's motion is denied.

### The Parties

Tuff is a New York corporation with its principal place of business in New York, New York.

Sugarhill Music Publishing, Inc., Sugar Hill Records, Inc., and Sugar Hill Music Publishing, Ltd. are New Jersey corporations with their principal place of business in Englewood, New Jersey.

Sugar Hill Records, Ltd. and Sugar Hill Music, Ltd. have their principal places of business in Englewood, New Jersey. In its complaint, Tuff asserted that these entities are New Jersey corporations, but Sugarhill denied these claims in its answer.

Defendants are engaged in the business of commissioning, acquiring, owning, licensing and selling musical compositions, works, songs, and the recorded performances thereof.

### Prior Proceedings

The prior proceedings and facts of this case are set forth in a prior opinion of this Court, familiarity with which is assumed. *See Tuff–N–Rumble Mgt., Inc. v. Sugarhill Music Publishing Inc.*, 8 F.Supp.2d

357 (S.D.N.Y.1998). Prior proceedings and facts relevant to the instant motion are set forth below.

Tuff filed a complaint against Sugarhill alleging copyright infringement, violation of the Lanham Act, tortious interference with prospective economic advantage, and unfair business practices in violation of New York General Business Law on October 17, 1997. Sugarhill filed its answer and six counterclaims on March 9, 1998. Sugarhill alleges that Tuff committed copyright infringement in violation of copyright law and that Tuff is liable under New Jersey law for interference with prospective economic advantage, tortious interference with contract, slander of title, defamation, and malicious prosecution.

On March 26, 1998, Tuff filed a motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the six counterclaims asserted against it by Sugarhill. By opinion and order dated June 15, 1998, the Court granted the motion to dismiss Sugarhill's counterclaim for malicious prosecution, but denied the motion to dismiss the counterclaims of interference with prospective economic advantage, tortious interference with contract, slander of title, defamation, and copyright infringement.

On December 15, 1998, Tuff moved to amend the complaint to join additional defendants. Tuff's motion was granted by order dated January 27, 1999. Tuff filed and served its amended complaint (the "Amended Complaint") on February 3, 1999.

On December 17, 1999, Tuff filed the instant motions to dismiss the Sugarhill counterclaims. Oral argument was heard on February 14, 1999, at which time the motions were deemed fully submitted.

Sugarhill moved to strike the Amended Complaint on February 12, 1999. Opposition and reply papers were received through March 10, 1999, at which time the motion was deemed fully submitted.

*Facts*

■ For the purposes of these motions addressed to the pleadings the factual allegations of the pleadings are taken as true, though it is appropriate when considering jurisdictional issues to consider matters outside the parameters of the pleadings. *See Cargill Intern. S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1019 (2d Cir.1993); *Kamen v. A.T. & T. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986). When considering Tuff's motion to dismiss the counterclaims for lack of subject matter jurisdiction, all material factual allegations in Sugarhill's answer must be accepted as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992); *Rubin v. Tourneau, Inc.,* 797 F.Supp. 247, 248 (S.D.N.Y. 1992). However, the Court must examine the substance of the allegations and any other evidence before it in resolving the jurisdictional dispute, *see Cargill,* 991 F.2d at 1019, but need not draw argumentative inferences favorable to the party asserting jurisdiction. *See Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925); *Atlantic Mutual,* 968 F.2d at 198. Therefore, the factual allegations set forth below do not constitute findings of fact by the Court. Unless otherwise indicated, the facts are drawn from the allegations made by Sugarhill in their counterclaims.

The dispute between Tuff and Sugarhill focuses on the copyright ownership of the song "Spoonin' Rap," a musical composition (the "Composition") by Gabriel Jackson, a/k/a Marion Jackson, professionally known as Spoonie Gee ("Jackson"). On or about November 1, 1979, Jackson sold to Heavenly Crown Music his rights to the Composition and the master recording (the "Master"). On June 9, 1980, Peter Brown, on behalf of Heavenly Crown Music, assigned the copyright to both the Composition and the Master to Sugarhill, which subsequently recorded the assignment in

the United States Copyright Office on August 18, 1995.

According to Tuff, Jackson assigned his copyright interest in the Composition to Tuff in 1988, and it holds United States Copyright Registration SR 174–458, dated August 23, 1994 (the "Registration"). Sugarhill, however, maintains that Tuff's copyright registration covers only the sounding recording.

Although Tuff has had knowledge of Sugarhill's interest in "Spoonin' Rap," it has represented itself as the rightful owner of both the Composition and the Master and claimed exclusive entitlement to all royalties and licensing fees. As a result of Tuff's assertions, Sugarhill has had to place money attributable to royalties and/or licensing fees in escrow.

Sugarhill further alleges that Tuff has authorized third parties to use the Composition and has collected royalties and commissions from RCA for the "Fresh" movie soundtrack, the movie "Love Without Pity," and the domestic/international release of "True School" by K–Tel International. In addition, Tuff has filed claims against Sugarhill's licensees.

Prior to the present action, Tuff brought similar claims against Sugarhill in the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C–275–97. Sugarhill had the case removed to the United States District Court for the District of New Jersey, whereupon the court granted Tuff's motion for voluntary dismissal without prejudice.

### Discussion

### I. Tuff's Motion to Dismiss the Counterclaim for Copyright Infringement is Granted

██ Tuff has moved to dismiss Sugarhill's counterclaim for copyright infringement on the grounds of lack of subject matter jurisdiction. The party invoking federal jurisdiction must "allege in [its] pleadings the facts essential to show juris-

diction," and "must support [those facts] by competent proof." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Board of Educ. of the Mount Sinai Union Free Sch. Dist. v. New York State Teachers Retirement Sys.*, 60 F.3d 106, 109 (2d Cir.1995) (*citing FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). Sugarhill bears the burden of satisfying the jurisdictional requirements of the Copyright Act.

██ Under the Copyright Act, "no action for infringement of the copyright of any work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). "The registration requirement is a jurisdictional prerequisite to an infringement suit." *Noble v. Town Sports International, Inc.*, 1998 WL 43127 at *1 (S.D.N.Y. Feb. 2, 1998) (*citing M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 & n. 4 (11th Cir.1990)). Thus, district courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a party asserts in his pleadings that he has received an actual certificate of registration or its denial from the Copyright Office. *See Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 453 (2d Cir.1989); *Geritrex Corp. v. Dermarite Indus., LLC*, 910 F.Supp. 955, 966 (S.D.N.Y.1996).

██ Defendants admit that they do not have nor have they applied for a copyright registration for the Composition. Thus, despite Sugarhill's assertion that this action is an "essential and necessary totality of adjudication that precludes the barring of any party's claims herein on the basis of the ritual jurisprudence asserted by plaintiff," (Defendant's Brief at 20), this Court does not have subject matter jurisdiction to hear the counterclaim for copyright infringement, and, accordingly, this counterclaim must be dismissed.[1]

---

1. Sugarhill also contends that because the

Court denied Tuff's 12(b)(6) motion to dismiss

## II. *Tuff's Motion for Summary Judgment is Granted in Part and Denied In Part*

### A. *Legal Standard*

The motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted when there is no issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991). If, on the other hand, a reasonable finder of fact could return a verdict for the nonmoving party, there is a genuine factual dispute and summary judgment should not be granted. *See Zeevi v. Union Bank of Switzerland*, No. 89 Civ. 4637, 1992 WL 8347, *4 (S.D.N.Y. Jan.29, 1992). "[T]he trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir.1994).

While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence. Fed.R.Civ.P. 56(e). In order to raise a material issue of fact, affidavits must be based on personal knowledge. *Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576 (2d Cir.1993); *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103 (S.D.N.Y.1989).

Tuff has moved to dismiss Sugarhill's counterclaims for tortious interference with contract and defamation, and to dismiss Sugarhill's affirmative defense of prior transfer.

### 1. *Tortious Interference with Contract*

■ Under New Jersey law, the elements of a claim for tortious interference with contract are: (1) the existence of the contract; (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages. *See Velop, Inc. v. Kaplan*, 301 N.J.Super. 32, 693 A.2d 917 (App.Div.1997). Where one or more of the requisite elements is not established, summary judgment is appropriate. *See Silvestre v. Bell Atlantic Corp.*, 973 F.Supp. 475, 485 (D.N.J.1997).

Tuff contends that Sugarhill has failed to establish the existence of either a contract or a contract that has been breached. Sugarhill counters that it has a "valid and subsisting cause of action for contractual interference," and points to a letter from BMG Music ("BMG")[2] to Sugarhill dated September 27, 1995. The letter references

---

the copyright infringement claim, this issue has already been determined, and the copyright infringement counterclaim must survive as the law of the case. However, the instant motion is made pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss for lack of subject matter jurisdiction, and not for failure to state a claim upon which relief may be granted. The issue of subject matter jurisdiction was not raised by the parties, nor was it addressed by the Court in the Opinion of June 15, 1998. Subject matter jurisdiction cannot be waived by either party and can be raised at any time by either party or on a court's own motion.

*See United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 303 (2d Cir. 1994).

**2.** Although the letter is written on RCA Records ("RCA") letterhead, the parties refer to the author of this letter as BMG. Joseph Robinson Sr., president and CEO of Sugarhill and defendants' 30(b)(6) witness testified at his deposition of November 30, 1998 that BMG and RCA are functionally equivalent. (Warshavsky Dec.Exh. 1 at 15–16).

a lawsuit brought by Tuff against BMG and states in pertinent part:

> In light of the requirements of the agreement between Sugar Hill Records on the one hand and Miramax and RCA Records on the other, dated July 8, 1994, with respect to the Master Recording "Spoonin' Rap" by Spoonie Gee (the "Agreement"), this letter will serve as a formal notice of Tuff City's claim as set forth in the attached complaint. Please be advised that the complaint contains allegations which are inconsistent with the warranties and representations made by Sugar Hill in paragraph 3 of the Agreement. Accordingly, RCA Records hereby invokes its right to be reimbursed by Sugar Hill Records for any damages arising out of such claim pursuant to paragraph 4 of the Agreement.

(Gandel Dec.Exh. M).

While this letter indicates that BMG and Sugarhill had a contract, it does not show that the contract was breached nor the loss of any prospective gain to Sugarhill.

Sugarhill asserts that a series of documents demonstrate that it had contracts with which Tuff interfered. Upon examination, however, while some of the documents suggest the existence of a contract, none indicate any interference with those contracts by Tuff.[3]

Sugarhill suggests that in accordance with music industry practice, it does not enter contracts. This assertion is belied by the aforementioned evidence in the record tending to suggest that Sugarhill did enter into written contracts. Moreover, to the extent that Sugarhill alleges interference with negotiations, these allegations are more properly dealt with in the context of defendants' claim for tortious interference with prospective economic advantage.

Joseph Robinson Sr., president and CEO of Sugarhill ("Robinson"), testified that the only contract signed by the defendants with which Tuff interfered was with Arista or Bad Boy Records (collectively, "Arista"). Robinson explained that he entered into an agreement with Arista for Arista's use of "Spoonin' Rap," and that Arista was holding the money it owed to Sugarhill in escrow pending the outcome of this litigation. Robinson avers that Tuff contacted Deborah Mannis Gardner ("Gardner") at BMG and apprised her that it was the rightful owner of both the Composition and the Master and claimed exclusive entitlement to all royalties and licensing fees. Gardner, in turn, contacted Arista and "told them what the situation was." Consequently, Arista decided to hold the money it owed to Sugarhill in escrow.

Arguably, Tuff's representations to BMG and Arista constitute an interference with an existing contract between Sugarhill and Arista. The question remains, however, as to whether Tuff's interference was "intentional and with malice."

In the context of a claim for tortious interference with contract, malice does not mean "ill will toward" the victim. "Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Printing Mart–Morristown v. Sharp Electronics*, 116 N.J. 739, 751, 563 A.2d 31 (1989). Implicit in this definition of malice "is acceptance of the principle that requisite intent may be either a specific intent to interfere with the contract or the taking of improper action with knowledge that interference will probably result." *Velop*, 301 N.J.Super. at 49, 693 A.2d at 926.

---

**3.** Some of the documents referred to by Sugarhill, such as, a signed agreement between Sugar Hill Music and Mackworld, Inc. leasing the Composition, indicate the existence of a contract between Sugarhill and a third party. Other documents cited by defendants, such as a letter from the Harry Fox Agency to Tuff stating that it represents the defendants and a letter from the defendants stating that Tuff voluntarily withdrew its action in New Jersey, have no apparent significance to Sugarhill's counterclaim of tortious interference with contract.

On this record, a question of fact exists as to whether Tuff's interference was malicious and intentional. There is also a question of fact as to what, if any, damages Sugarhill has sustained as a result of the interference. Accordingly, summary judgment is not appropriate as to Sugarhill's counterclaim for tortious interference with contract.

## 2. *Defamation*

In order to prove defamation, Sugarhill must establish that Tuff made a defamatory statement of fact concerning Sugarhill, which was false and which was communicated to a third party as well as fault and damages. *See Feggans v. Billington*, 291 N.J.Super. 382, 390–91, 677 A.2d 771, 775 (App.Div.1996). Unless subject to a privilege, fault may be established by showing that Tuff was negligent in its failure "to ascertain the truth or falsity of the statement before communicating it" or that Tuff, knowing the statement to be false, "acted with reckless disregard of its truth or falsity." *Id.* Sugarhill "need not show that the words impute to them illegality or immorality. It is sufficient that the false declaration adversely affect [its] reputation, business, trade, profession or office. New Jersey courts have long held actionable false statements designed to produce an adverse effect on one's business or trade." *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 766, 563 A.2d 31, 45 (1989).

Sugarhill contends that Tuff's statements concerning the ownership of the Composition and the Master of "Spoonin' Rap" suggest that it has violated copyright law and thus may be subject to criminal penalties. Sugarhill maintains that Tuff's statements tended to "denigrate and degrade" the reputation of Sugarhill.

It is not clear from this record exactly when Tuff allegedly made the defamatory statements or what precisely was said. However, insofar as the alleged defamatory remarks were made in connection with judicial or quasi-judicial proceedings, they are arguably protected by the litigation privilege. New Jersey has recognized the litigation privilege as "the backbone to an effective and smoothly operating judicial system." *Peterson v. Ballard*, 292 N.J.Super. 575, 582, 679 A.2d 657 (App.Div.1996) (*quoting Hawkins v. Harris*, 141 N.J. 207, 222, 661 A.2d 284 (1995)). The privilege protects, as absolutely immune from liability, statements made by judges, attorneys, witnesses, parties and jurors made in the course of judicial or quasi-judicial proceedings. *See Peterson,* 292 N.J.Super. at 581, 679 A.2d 657; *Rainier's Dairies v. Raritan Valley Farms,* 19 N.J. 552, 558, 117 A.2d 889, 891 (1955).

Sugarhill correctly notes that whether the statements allegedly made by Tuff are false is a factual issue that is "enmeshed" in the ultimate resolution of this action. As noted, what, if any damages, suffered by Sugarhill as a result of Tuff's representations to BMG and Arista is also an issue of fact.[4] Thus, Tuff's motion for summary judgment on Sugarhill's counterclaim for defamation is denied.

## 3. *Prior Transfer*

17 U.S.C. § 205(c) provides:

Recordation as Constructive Notice. Recordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document, but only if—

(1) the document, or material attached to it, specifically identifies the work to which it pertains so that, after the document is indexed by the Register of

---

4. With the exception of the monies being held in escrow by Arista, Sugarhill has produced no evidence to establish that it has suffered any damages as a result of the alleged defamation. None of the documents produced by Sugarhill indicate any adverse effects suffered by Sugarhill as a consequence of Tuff's purported remarks, and a review of the record reveals no (other) evidence of damages attributable to the alleged defamation.

Copyrights, it would be revealed by a reasonable search under the title or registration number of the work; and (2) registration has been made of the work.

17 U.S.C § 205(d) provides:

> Priority Between Conflicting Transfers. As between two conflicting transfers the one that is executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within one month after its execution in the United States, or at any time before recordation of the latter transfer. Otherwise the latter transfer prevails if recorded first in such manner and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, and without notice of the earlier transfer.

█ Tuff registered its copyright on August 23, 1994 and Sugarhill's recordation was docketed on August 8, 1995. Sugarhill avers that it received its assignment of the copyright to the Composition and the Master from Peter Brown on June 9, 1980. Tuff received its assignment from Peter Brown on June 27, 1988. As Tuff's registration predates Sugarhill's recordation, and the parties do not dispute that the transfer between Tuff and Peter Brown was for good and valuable consideration, in order for Sugarhill to prevail on the affirmative defense of prior transfer, it must establish that Tuff had constructive notice of the assignment from Peter Brown to Sugarhill before the date of plaintiff's registration. However, Sugarhill has produced no evidence demonstrating knowledge on the part of Tuff. Sugarhill has produced no documents indicating that it notified Tuff or any other party of its claim to ownership prior to Tuff's registration.[5] A review of the record reveals no evidence that Tuff knew anything about the assignment to Sugarhill prior to August 9, 1995, when Sugarhill's recordation was filed with the Copyright Office.

Sugarhill contends that (1)"Tuff had long standing knowledge of [defendants'] relationship with the subject artist,"; (2) Tuff's claims are "marred by its lack of good faith."; and (3)"the parties competed for claims of the music." (Defendants' Brief at 4–5, 9). However, Sugarhill does not provide any evidence to support these assertions. Accordingly, summary judgment is appropriate. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991) (bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment).

### III. *Sugarhill's Motion is Denied*

█ Sugarhill has moved to strike Tuff's Amended Complaint on the grounds that the Amended Complaint as filed exceeds the scope of the leave granted to Tuff by the Court. Specifically, Sugarhill contends that while Tuff was granted leave to add two defendants—29 Black Music and Robinson—the Amended Complaint "materially and substantively redefine[s] its causes of action." (Defendants' Brief at 23). Sugarhill submits that it would be "grossly unfair" and prejudicial to permit the Amended Complaint to stand. (*Id.* at 22).

Although Sugarhill does not indicate under what rule it is proceeding, motions to strike are generally brought under Rule 12(f) of the Federal Rules of Civil Procedure which provides that "the court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." Sugarhill has not alleged nor demonstrated that any of the amended pleadings are "redundant, imma-

---

**5.** In November, 1993, defendants sent a letter to Tuff regarding their ownership of "Spoonin' Rap." Enclosed with the letter were a PA copyright registration for "Spoonin' Rap" and a SR registration for "Spoonin' Rap." Robinson admits that these registrations were falsified—the titles of the PA and SR registra-tions were altered from "Spoonie is Back to Spoonin' Rap." The original copies of the registrations do not cover "Spoonin' Rap." In response to Tuff's inquiry, the Copyright Office informed Tuff on December 30, 1993, that there were no registrations or recorded assignments covering "Spoonin' Rap."

terial, impertinent, or scandalous" nor have they demonstrated any prejudice they would suffer as a result of the amended pleadings.

Sugarhill is correct that paragraphs 23, 24, 26, 27, 28, 29, 30, and 33 are "new." However, these paragraphs (1) add new parties to this action, and (2) specify certain acts that were alleged as the basis for Tuff's motion to amend. Other than adding new parties to this action, and giving a factual justification therefore, these paragraphs do not change any of the causes of action.

Tuff asserts that a number of the amended allegations, objected to by Sugarhill, were altered in accordance with Fed. R.Civ.P. 11(b) which provides that an attorney's signature on a pleading "certif[ies] that to the best of that person's knowledge, information, and belief ... the allegations and other factual contentions have evidentiary support." None of these amendments, most of which are fairly minor, alter the substance of the complaint.[6] The same is true for paragraphs 16, 25, 31, 58 and 60 which have been slightly reworded [7] and paragraphs 36–39 and 40–48 which have been split into separate paragraphs.

Finally, Sugarhill objects to certain paragraphs in the prayer for relief. Each of these paragraphs requests that this Court pierce the corporate veil. Insofar as these prayers for relief refer to the additional defendants 29 Black Music and Robinson, they are within the scope of the leave granted by this Court. The prayers for relief against the other defendants are supported by allegations in the first complaint which alleged that the defendants were merely alter egos of their officers. *See* Fed.R.Civ.P. 15(c). Moreover, technically, amendments adding an additional remedy "are not necessary" since Rule 54(c) provides that regardless of the formal demand for relief, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled ..." Fed.R.Civ.P. 54(c); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1474.

Sugarhill has failed to demonstrate that any portion of the Amended Complaint is "redundant, immaterial, impertinent, or scandalous matter," or that it will be prejudiced by the amended pleadings. Thus, Sugarhill's motion to strike the Amended Complaint is denied.

### Conclusion

For the reasons stated above, Tuff's motions are granted in part and denied in part, and Sugarhill's motion is denied.

It is so ordered.

---

**6.** For example, in paragraphs 4, 7, 10 and 13 Tuff amended the word "corporation" to read "entity" as to the best of Tuff's knowledge, the relevant defendants are not incorporated.

**7.** For example, in paragraph 31 the phrase "each defendant" now reads "each individual defendant."