**TUFF–N–RUMBLE MANAGEMENT, INC. d/b/a Tuff City Records, Plaintiff,**

v.

**SUGARHILL MUSIC PUBLISHING INC., Sugar Hill Records, Ltd., Sugar Hill Records, Inc., Sugar Hill Music, Inc., Sugar Hill Music Publishing, Ltd., Twenty Nine Black Music, and Joseph Robinson, Sr., Defendants.**

**No. 97 CIV. 7700 (RWS).**

United States District Court, S.D. New York.

June 13, 2000.

Cobrin & Gittes, New York City, Oren J. Warshavsky, Clyde A. Shuman, of counsel, for Plaintiff.

Cinque & Cinque, New York City, Robert W. Cinque, James P. Cinque, of counsel, for Defendants.

*OPINION*

SWEET, District Judge.

Defendants Sugarhill Music Publishing Inc., Sugar Hill Records Ltd., Sugar Hill Records, Inc., Sugar Hill Music, Ltd., Sugar Hill Music, Inc., Sugar Hill Music Publishing, Ltd., Twenty Nine Black Music, and Joseph Robinson, Sr. ("Defendants") have moved, pursuant to Rule 60(b), Fed. R.Civ.P., for relief from the judgment of this Court entered on March 29, 2000 in favor of plaintiff Tuff–n–Rumble Management, Inc. d/b/a/ Tuff City Records ("Tuff"). For the reasons set forth below, the motion will be denied, but in the interests of justice the action will be reopened and limited discovery will be permitted on the question of damages.

■ To say that this lawsuit has not proceeded with the greatest decorum or the highest ethical standards is an understatement. The parties are highly litigious and have engaged in excessive motion practice. Defendants, perhaps deliberately, perhaps inadvertently, delayed the progress of the case in repeated instances and also submitted documents to the Court for which there is strong evidence of forgery and fraud, while certain of the affidavits and decla-

rations submitted by Tuff, while not overtly self-contradictory, raise questions about veracity. The Court's generosity in granting extensions of the discovery deadline was eventually exhausted, and after Defendants defaulted on Tuff's numerous motions for summary judgment, damages were assessed in the amount of $2,008,914.64, based solely upon Tuff's submissions, as Defendants had never—in spite of the repeated extensions granted by the Court—produced documents responsive to Tuff's inquiries regarding Defendants' earnings from licensings of "Spoonin' Rap." After the assessment of damages, Defendants, awakened, it seems, to the gravity of the situation, obtained new counsel, and, in this motion, essentially set forth an entirely new defense never previously raised in the two-and-a-half years during which the pretrial phase of this litigation had dragged on. That the defense asserts a lack of subject matter jurisdiction requires the Court to consider it carefully, for lack of subject matter jurisdiction can be raised at any stage during the course of a litigation. Nevertheless, for the reasons set forth below, Defendants' contentions lack merit.

### Prior Proceedings

The facts and prior proceedings in this action have been set forth in four decisions of this Court, familiarity with which is assumed. *See Tuff–N–Rumble Management, Inc. v. Sugarhill Music Publ'g Inc.,* No. 97 Civ. 7700, 2000 WL 274192 (S.D.N.Y. March 13, 2000) ("*Tuff–N–Rumble IV*"); *Tuff–N–Rumble Management, Inc. v. Sugarhill Music Publ'g Inc.,* 75 F.Supp.2d 242 (S.D.N.Y.1999) ("*Tuff–N–Rumble III*"); *Tuff–N–Rumble Management, Inc. v. Sugarhill Music Publ'g Inc.,* 49 F.Supp.2d 673 (S.D.N.Y.1999) ("*Tuff–N–Rumble II*"); *Tuff–N–Rumble Management, Inc. v. Sugarhill Music Publ'g Inc.,* 8 F.Supp.2d 357 (S.D.N.Y.1998) ("*Tuff–N–Rumble I*"). Facts and proceedings relevant to the instant motion are set forth below.

Judgment for Tuff was entered on March 29, 2000 and included a damages award totaling $2,008,914.64. The judgment followed the granting of Tuff's motions for summary judgment on the remaining causes of action, and for a determination of damages based on Defendants' complete failure to comply with Tuff's discovery requests. For reasons unknown to the Court, those motions were unopposed by Defendants. *See Tuff–N–Rumble IV,* 2000 WL 274192.

After the decision was issued, Defendants substituted counsel. Defendants' new counsel, by order to show cause, sought a temporary stay of enforcement of the judgment pending the resolution of the instant motion. A temporary stay was ordered on April 3, 2000. Briefs and other papers in support of and in opposition to the motion were received through April 5, when oral argument was heard.

### Facts

In November 1979, Gabriel Jackson, a/k/a Marion Jackson, professionally known as Spoonie Gee ("Jackson"), recorded the song "Spoonin' Rap." Peter Brown ("Brown"), the alleged owner of Queen Constance Records and Heavenly Crown Music, was working with Jackson at the time the recording took place. The nature of Brown's role in the recording is unclear; however, there is no dispute that Jackson was the sole creator of the words and music to "Spoonin' Rap" (the "Composition Component"), and that he was also the sole creator of the original master recording of "Spoonin' Rap" (the "Master Component").

Jackson made the following statements, among others, in an affidavit signed on July 15, 1999 (the "July 15, 1999 Affidavit"): (1) copies of the Master Component were released by a company called "Sound of New York"; (2) Peter Brown was, in 1979, the president and sole owner of "Sound of New York"; (3) Jackson never entered into an agreement conveying the

rights to the Composition Component to Peter Brown.

Jackson made the following statements, among others, in an affidavit signed on April 4, 2000 and submitted in connection with the instant motion: (1) Around the time "Spoonin' Rap" was recorded (i.e., in November 1979), Jackson assigned, in writing, the Master Component to Brown; (2) in 1983, Jackson transferred to Tuff the ownership of Jackson's rights to his masters (the "1983 Agreement"); (3) in 1984, Jackson transferred, in writing, to Tuff the ownership of Jackson's rights to his compositions, including the right to the Composition Component of "Spoonin' Rap" (the "1984 Agreement"); (4) in 1994 or 1995, Tuff informed Jackson that Tuff had purchased from Brown the Composition Component, and Jackson informed Tuff that Brown did not have the rights to the Composition Component; (5) in June 1995, Jackson entered into a contract (the "June, 1995 Agreement") with Tuff confirming that Tuff owned the Composition Component pursuant to the 1984 Agreement; (6) in Jackson's view, Tuff owns both the Composition Component and the Master Component.

On June 27, 1988, Brown entered into a contract with Tuff under which Brown conveyed and assigned to Tuff all rights he owned to "Spoonin' Rap" for the sum of $200 (the "1988 Agreement").

Aaron Fuchs ("Fuchs"), president and sole owner of Tuff, confirmed in a declaration signed on April 4, 2000 and submitted in connection with the instant motion that Jackson and Tuff entered into the 1983 Agreement and the 1984 Agreement. Fuchs also stated that Tuff entered into the 1988 Agreement with Brown because Tuff wanted to own both the Master Component and the Composition Component of "Spoonin' Rap" and Tuff was unsure which rights were held by Jackson and which by Brown, because Jackson and Brown told Tuff inconsistent stories. Brown also showed Fuchs documentation to support Brown's claim that he owned both the Composition Component and the Master Component. Fuchs did not know if the documents were genuine, but purchased all the rights from Brown in any event.

In the course of this litigation, Defendants produced a document purporting to be a contract between Jackson and Heavenly Crown Music, dated November 1, 1979, and purportedly signed by Jackson and Brown, under which Jackson assigned his rights to all his compositions written between November 1, 1979 and November 1, 1982, to Brown. This document, if valid, would have effected the transfer of Jackson's right to the Composition Component to Brown. Defendants also produced documents purporting to be contracts under which, on June 9, 1980, Brown allegedly assigned his rights to both the Composition Component and the Master Component of "Spoonin' Rap" to Joseph Robinson, Sr. ("Robinson") on behalf of Sugar Hill Records, Ltd. and Sugar Hill Music, Ltd. It has been established, however, that these documents carry no evidentiary weight because of substantial doubts regarding the authenticity of the signatures on the documents and the likelihood of Defendants' attempt to perpetrate a fraud by photocopying signatures from later documents. While photocopies of the documents were produced by Defendants in the course of discovery, Defendants have never produced the original documents with original signatures. As previously established by this Court, Tuff's forensic document examiner, expert Paul A. Osborn, cast sufficient doubt on the authenticity of the signatures on the documents to discredit them. *See Tuff–N–Rumble III,* 75 F.Supp.2d at 244. The discrediting is reinforced by the fact that Defendants have never contested the findings of Osborn, nor have Defendants, apparently, been willing to disclose the originals of the agreements (if such exist) to disprove Tuff's allegations of fraud and/or forgery. Under these circumstances, the documents carry no probative weight.

No writing has been produced by Tuff to substantiate Jackson's and Fuchs' statements regarding the existence of the 1983 Agreement or the 1984 Agreement. Tuff's first mention of the 1983 Agreement and the 1984 Agreement was in response to the instant motion.

In November 1993, Defendants contacted Tuff, stating that Defendants owned "Spoonin' Rap." To demonstrate ownership, Defendants provided Tuff with two copyright registrations—one purporting to cover the Master Component and one purporting to cover the Composition Component. These same purported copyright registrations were also shown to various third parties to demonstrate ownership. These copyright registrations, however, were not genuine, as Tuff was informed by the United States Copyright Office. The registrations covered a different song, "Spoonie Is Back." On December 30, 1993, Tuff received a letter from the Copyright Office informing Tuff that no registration for "Spoonin' Rap" existed from 1978 through November 26, 1993. On August 23, 1994, Tuff registered "Spoonin' Rap" with the Copyright Office.

On August 18, 1995, Defendants recorded with the Copyright Office the purported assignment of the rights to "Spoonin' Rap" from Brown to Defendants on June 9, 1981.

Tuff's copyright registration form filed with the Copyright Office for "Spoonin' Rap" contains the following misstatements: (1) Tuff City is listed as a co-author of "Spoonin' Rap," along with Jackson; (2) the year in which the work was completed is stated to be 1981; (3) October 27, 1988 is listed as the date when the work was first published. The form was submitted by Fuchs. In fact, Jackson was the sole author of the song, which was completed in 1979 and first published in 1979 or 1980.

Fuchs, in his April 4, 2000 declaration, states that these mistakes were inadvertent. Tuff was listed as an author because Fuchs mistakenly believed that the fact that Tuff cleaned up the master recording of "Spoonin' Rap" obtained from Brown in 1988 somehow made Tuff a co-creator of the song. Fuchs also believed at that time that the song was created in 1981, and that the publication date was the date the deposit provided to the Copyright Office was published. Fuchs claims that none of these mistakes was intentional and that there was no intent to deceive the Copyright Office.

Fuchs also states that in the last few years, Tuff has purchased songs from the 1950's, 1960's, and 1970's which were never registered for copyright protection. Tuff has since filed "dozens" of copyright applications for these songs in which Tuff is not listed as an author of the song. The Copyright Office, according to Fuchs, has not rejected any of these applications.

### Discussion

Defendants seek relief from the judgment pursuant to Rule 60(b)(3), (4), & (6), Fed.R.Civ.P. Defendants contend that the Court lacks subject matter jurisdiction over this action due to fraud committed on the Copyright Office and failure to establish chain of title.

Rule 60(b) of the Federal Rules of Civil Procedure provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; ... or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

"Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. In other words it should be broadly construed to do 'substantial justice,' yet final judgments should not 'be lightly reopened.'" *Nemaizer v. Baker,* 793 F.2d

58, 61 (2d Cir.1986) (*quoting Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981)). A motion under Rule 60(b) is generally directed to the "sound discretion" of the district court. *See id.; Matarese v. Le Fevre*, 801 F.2d 98, 106–07 (2d Cir.1986).

■ A judgment is void and subject to vacatur if the court lacks subject matter jurisdiction. *See United States v. Forma*, 42 F.3d 759, 762 (2d Cir.1994); *Smalls v. Batista*, 22 F.Supp.2d 230, 231 (S.D.N.Y. 1998). Unlike motions made pursuant to other subsections of Rule 60(b), the court lacks discretion with respect to a motion made under Rule 60(b)(4); if void, the court must vacate the judgment. *See id.*

■ As an initial matter, Defendants misconstrue the requirement for establishing subject matter jurisdiction for copyright infringement. Defendants cite 17 U.S.C. § 411(a) for the proposition that "Proof of ownership of an existing, *valid* and registered copyright interest is a statutory prerequisite to filing an infringement action." (Defs.' Mem. Supp. at 5.) The quote, however, actually comes from *Religious Technology Center v. Netcom On–Line Com.*, 923 F.Supp. 1231, 1241 (N.D.Cal.1995), cited by Defendants *after* the cite to the Copyright Act. While *Religious Technology* cites 17 U.S.C. § 411(a) as support for the quote, *Religious Technolgy* is not, of course, controlling authority for this Court. More importantly, however, the *Religious Technology* court appears to have mistaken the requirements for maintaining subject matter jurisdiction with the first requirement for prevailing on the merits of a copyright infringement action.[1] The pertinent language from § 411(a) states that, except in certain situations not relevant here, "no action for infringement of the copyright in any United States work

shall be instituted until registration of the copyright claim has been made in accordance with this title." Registration, or attempted registration, with the Copyright Office, not demonstration of ownership of a valid copyright, is the requirement for establishing federal subject matter jurisdiction. *See Tuff–N–Rumble II*, 49 F.Supp.2d at 677 (citing cases). There is no dispute that Tuff sought and obtained registration for "Spoonin' Rap" from the Copyright Office.

Defendants also contend, however, that Tuff committed a fraud upon the Copyright Office in its application for registration of "Spoonin' Rap," thereby rendering the registration invalid and incapable of supporting an infringement action.

■ "A party seeking to establish a fraud on the Copyright Office ... bears a heavy burden. The party asserting fraud must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations." *Lennon v. Seaman*, 84 F.Supp.2d 522, 525 (S.D.N.Y.2000) (citations omitted); *see also Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir.1984) ("Only the knowing failure to advise the copyright office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action.") (internal quotations omitted); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 456 (2d Cir.1989).

■ There were three factual inaccuracies on Tuff's application for registration of "Spoonin' Rap": Tuff City Records is listed as a co-author; the date of creation is listed as 1981; and the date of publication is listed as October 27, 1988. In fact,

---

**1.** To prevail on the merits of an infringement claim, a plaintiff must demonstrate "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *accord Fonar Corp. v. Domenick*, 105 F.3d 99, 103 (2d Cir. 1997).

Jackson is the sole author; the date of creation is 1979; and the date of publication is 1979. Defendants suggest, without any evidentiary support, that these inaccuracies were deliberately perpetrated by Tuff in order to deceive the Copyright Office into granting registration where it otherwise might have raised an issue.

In response, Tuff has submitted the declaration of Fuchs, who has stated as set forth above that these mistakes were inadvertent, and that there was no intent to deceive the Copyright Office.

Fuchs has also stated that in the last few years, Tuff has purchased songs from the 1950's, 1960's, and 1970's which were never registered for copyright protection. Tuff has since filed "dozens" of copyright applications for these songs in which Tuff is not listed as an author of the song. The Copyright Office, according to Fuchs, has not rejected any of these applications.

While Defendants dispute the credibility of Fuchs' declaration as a whole, they offer nothing beyond wholly conclusory allegations that Fuchs and other employees of Tuff were too knowledgeable about the record industry and the process of obtaining copyright registrations to have made such mistakes inadvertently. Nor do Defendants cite to any authority suggesting that the Copyright Office would have rejected—or even questioned—Tuff's application if the true facts had been set forth. That is, had the application correctly listed Jackson as the sole author, with 1979 dates of creation and publication, nothing on this record suggests that the application would have been rejected. Defendants have thus established no basis why Fuchs would have deliberately deceived the Copyright Office, and, as already mentioned, there is no evidence to counter Fuchs' declaration that the inaccuracies were entirely inadvertent. In addition, Fuchs has offered plausible explanations for the errors. For these

reasons, Defendants have simply not met their "heavy burden" of demonstrating a fraud on the Copyright Office. *Lennon*, 84 F.Supp.2d at 525.

Thus, because Tuff possesses a valid registration for "Spoonin' Rap" and because no fraud has been perpetrated on the Copyright Office to obtain the registration, this Court has subject matter jurisdiction over this action.

Defendants next devote considerable efforts to the assertion that Tuff has not established a proper chain of title to "Spoonin' Rap."[2] This assertion, however, is an attempt to relitigate the merits of the case; a successful chain of title defense would not strip the Court of jurisdiction but would constitute grounds for denying relief to Tuff on its infringement claim.

Defendants claim that as of August 23, 1994, the date Tuff's copyright registration SR 174–458 for "Spoonin' Rap" became effective, there was not in existence any written conveyance by Jackson of any of his rights in either the Composition Component or the Master Component of "Spoonin' Rap." This defense was never previously raised by Defendants. By contrast, Defendants had always previously maintained that the rights to both the Composition Component and the Master Component were validly transferred from Jackson to Brown in 1979, and from Brown to Defendants in 1981. These allegations were accepted by the Court as true for purposes of the numerous summary judgment motions on which the Court had to rule. *See Tuff–N–Rumble II*, 49 F.Supp.2d at 681 ("On or about November 1, 1979, Jackson sold to Heavenly Crown Music his rights to the Composition and the master recording.... On June 9, 1980, Peter Brown, on behalf of Heavenly Crown Music, assigned the copyright to both the Composition and the Master to Sugar-

---

**2.** Under the Copyright Act, "a transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).

hill. . . .”); *Tuff-N-Rumble III*, 75 F.Supp.2d at 244 (same).

Presumably, Defendants did not press the chain of title argument previously in this litigation because to do so would fundamentally undermine Defendants' own claims to the rights at issue, including the counterclaim for copyright infringement previously asserted and dismissed. Indeed, if the Court were now to accept Defendants' contentions that Jackson never conveyed his rights to Brown, then Defendants would be vulnerable to a suit from Jackson for the same infringements now asserted by Tuff. Moreover, Defendants would be subject to the doctrine of judicial estoppel and could be bound by the assertions they now urge this Court to adopt.[3] Of course, faced with a judgment in excess of $2,000,000, Defendants are understandably no longer so concerned about their own chain of title for "Spoonin' Rap."

■ As set forth above, establishing the chain of title is not a prerequisite to establishing subject matter jurisdiction, but, rather, can be a defense to establishment of valid ownership of the copyright. *See* 17 U.S.C. § 204(a). Notably, a party is not required to prove a valid chain of title in order to prevail on an infringement claim. The certificate of registration itself, if made within five years of the first publication of a work, constitutes *prima facie* evidence of the validity of the copyright. *See id.* § 410(c). Where, as here, registration is not made within five years of first publication, the evidentiary weight to be accorded to the certificate rests within the discretion of the court. *See id.* The only viable defense regarding the validity of Tuff's copyright previously raised by De-

3. Indeed, Tuff contends that the doctrine of judicial estoppel prevents Defendants from raising the chain of title argument at this point. Notwithstanding the fact that the Defendants fail entirely to address this issue in their reply papers, the Court declines to apply judicial estoppel here. Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [the party] in a prior legal proceeding." *Bates v. Long Island R.R.*, 997 F.2d 1028, 1037 (2d Cir.1993). "A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999).

It is not immediately clear that judicial estoppel applies in this situation. While Defendants have taken a clearly inconsistent position on the facts regarding the chain of title—previously asserting that the rights to the Composition Component and the Master Component had passed from Jackson to Brown in 1979, and from Brown to Sugarhill in 1981, and now asserting that no rights had ever passed from Jackson to Brown—this inconsistency did not arise in a prior proceeding, but in the instant proceeding. The Second Circuit has never held that judicial estoppel can apply to inconsistent positions in the same proceeding, although two courts in this District have so held, citing authority from the Sixth and Seventh Cir-

cuits. *See World Wide Communications, Inc. v. Rozar*, No. 96 Civ. 1056, 1998 WL 566813, at *1 (S.D.N.Y. Sept. 4, 1998) (citing *Continental Ill. Corp. v. Commissioner*, 998 F.2d 513, 518 (7th Cir.1993)); *Consumer News & Bus. Channel Partnership v. Financial News Network Inc. (In re Financial News Network Inc.)*, 134 B.R. 737, 743 (S.D.N.Y.1991) (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598–99 (6th Cir.1982)). And while other federal courts have reached the same conclusion, see *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996); *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir.1996); *Otto Wolff Handelsgesellschaft, mbH, v. Sheridan Transp. Co.*, 800 F.Supp. 1359, 1365 (E.D.Va.1992); *Liebersohn v. Fineberg (In re Fineberg)*, 202 B.R. 206 (E.D.Pa.1996), the doctrine is not looked upon very favorably in the Second Circuit, and there are good reasons for not extending it to cover inconsistencies in the same proceeding—including the tension between judicial estoppel and the liberal pleading standards of the Federal Rules, which permits alternative and inconsistent defenses, and the fact that the ultimate purpose of judicial estoppel, to prevent abuse of the courts by litigants, is easier to control when inconsistent facts are asserted in the same proceeding. Finally, because, as indicated in the text, the newly-raised chain of title contention does not affect subject matter jurisdiction, it is unnecessary here to resort to the use of judicial estoppel.

fendants was the defense of prior transfer, which the Court considered and rejected. Having been presented with no other reason to question the evidentiary weight of the certificate of registration going to the validity of Tuff's copyright, the Court relied upon the certificate to conclude that Tuff had a valid copyright in "Spoonin' Rap." *See Tuff–N–Rumble III,* 75 F.Supp.2d at 247. Defendants' motion, which is addressed to the Court's subject matter jurisdiction over the action, does not undermine the basis for the judgment and cannot here constitute grounds for relief.

Finally, Defendants' allegations in their reply memorandum of law that Tuff has engaged in "fraud and deception" by submitting the questionable affidavit of Jackson and declaration of Fuchs in connection with this motion are simply irrelevant to the question of subject matter jurisdiction. In any event, given Defendants' prior conduct in this litigation, they are hardly entitled to much weight.

However, neither party comes to this litigation with entirely clean hands.[4] While nothing in the instant motion requires reversal of the determination that Tuff has a valid copyright in "Spoonin' Rap" which Defendants have infringed, there is a potential inequity in the damages calculations, which may be higher than would actually be warranted had such calculations been based on actual revenues from Defendants' licensings of the song, in addition to the damages claimed from Defendants' interference with Tuff's attempts to license the song, rather than exclusively based on the representations of Tuff. The Court recognizes that Tuff has suffered certain hardships as a result of the lengthy delays in resolving this case. The potential inequity of a damages windfall, however, must be weighed against such hardships, and for this reason, Defendants will be permitted to amend their motion solely

for the purpose of reopening the case to present any documentary evidence leading to a more accurate calculation of damages.

### Conclusion

For the reasons set forth above, Defendants' motion is denied, but Defendants are granted leave to reopen the case for a more accurate determination of damages within twenty (20) days.

It is so ordered.

---

4. Indeed, in a memo written by Deborah Mannis–Gardner, a clearing agent in the music business, both Tuff and Defendants were described as having "hazy reputations." (Exh. 37 to Decl. of Jeffrey Gandel in Supp. Pl.'s Motion for Summ. J.; docket # 86.)