709 So.2d 1030 (1998)
Pearl Ann Davis and Wayne DAVIS, Individually and on Behalf of their Minor Child, Kristina Davis
v.
The BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, Dr. Joseph M. Miller, Jr., Dr. Yuan S. Kao, and John Van Brunt.
No. 97-CA-0382.
Court of Appeal of Louisiana, Fourth Circuit.
March 18, 1998.
Rehearing Denied April 30, 1998.
Joseph W. Thomas, New Orleans, for Plaintiffs/Appellants.
Richard Ieyoub, Attorney General, J. Marc Vezina, Nel F. Vezina, Special Assistant Attorneys General, Vezina and Gattuso, Gretna, for Defendants/Appellees.
*1031 Before BYRNES, LOBRANO, ARMSTRONG, WALTZER and LANDRIEU, JJ
WALTZER, Judge.

STATEMENT OF THE CASE
Pearl Ann and Wayne Davis sued the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") and its employees, Dr. Joseph M. Miller, Jr., Dr. Yuan S. Kao and John Van Brunt, alleging failure to advise them timely of a chromosomal abnormality, Trisomy 9 Mosaic Syndrome ("T9MS"), present in their then unborn child, Kristina Davis. The parents allege that had they known of the abnormality, they would have terminated the pregnancy. They seek damages on their own behalf for their extraordinary medical expenses, extraordinary costs of raising a child born with T9MS and their emotional and mental anguish arising from the child's birth (the wrongful birth claim). The parents also seek recovery on Kristina's behalf of her extraordinary medical expenses, physical and mental pain and suffering and loss of enjoyment of life associated with T9MS (the wrongful life claim).
The defendants answered, asserting that the genetic testing done on Kristina and her parents was performed in accordance with standard procedures, and that the results of the tests, including a micro marker indicating the increased possibility of the child's being born with a significant birth defect or mental retardation, were disclosed to the parents in a timely manner and their options, including the option of terminating the pregnancy, were timely discussed with the parents. Notwithstanding the advice, the parents elected to continue the pregnancy. The defendants further alleged that the T9MS was identified only by chordocentesis after Kristina's delivery, and that although a micro marker was discernable as a result of the amniocentesis, the rearranged chromosome 9 could not have been detected by amniocentesis prior to delivery. Defendants attached a copy of the opinion of the medical review panel finding no deviation from the community standard of medical care.
On 19 August 1996, Dr. Kao, Van Brunt and LSU filed a motion for partial summary judgment dismissing the parents' wrongful birth claim, contending that there is no dispute that the parents were counseled as to the existence of a chromosomal abnormality which could lead to a birth defect, and were notified within the time limits necessary to obtain an abortion if they had so desired.
On the same day, Dr. Kao, Van Brunt and LSU filed a motion for partial summary judgment dismissing Kristina's wrongful life claim based on the suggestion that Louisiana, like other states that have addressed the issue, does not recognize a cause of action for wrongful life.
On the same day, Dr. Miller and LSU filed a motion for summary judgment, making substantially the same allegations as those contained in the two motions for partial summary judgment filed by Dr. Kao, Van Brunt and LSU.
The motions for summary judgment were heard on 27 September 1996 and the trial court granted summary judgment on 3 October 1996 dismissing the wrongful life claim. The trial court denied the motions for summary judgment with respect to the wrongful birth claims filed on behalf of the parents and Kristina. Kristina and her parents appeal the judgment insofar as it dismisses the wrongful life claim.

STATEMENT OF FACTS
In her affidavit to the medical review panel, Kristina's mother swore that at an unspecified time during her third pregnancy she was concerned about the possibility of a birth defect and asked her obstetrician, Dr. Jack Jacob, about the possibility of an amniocentesis. He referred her to Dr. Miller, and an ultrasound and amniocentesis were performed at Southern Baptist Hospital on 28 June 1990. Kristina's gestational age was then estimated at between 13.8 and 16.8 weeks. On 11 July 1990, Dr. Miller's office advised the mother that the test results were normal; on 9 August 1990, Dr. Miller's office told her the results were not completely normal, and requested blood samples from both parents. The parents were advised during the 23rd week of gestation that there was a significant risk that the child would be born *1032 with a birth defect. Kristina's mother claims in her affidavit that "since the fetus was viable" she refused to terminate the pregnancy; however, had she been informed of the defect in her 16th through 19th week of gestation, she would have aborted Kristina. The affiant gave no basis for her opinion that "the fetus was viable" at 23 weeks gestation.
Dr. Miller testified in his deposition that Mrs. Davis was about 22 weeks into her pregnancy on 14 August 1990 when he offered the parents the option to terminate the pregnancy. He identified this time frame as within the second trimester of pregnancy, and testified that the third trimester begins at about 27 or 28 weeks of gestation. Not until 26 or 27 weeks would the baby be able independently to sustain life, that is, to be viable.
Dr. Miller also testified that on 14 August 1990 he offered the parents the option of carrying the pregnancy to term, with follow-up evaluations to see if any identifiable abnormalities could be observed by ultrasound and with routine obstetric care by the attending physician, and advised the parents of their option to have an abortion. At the end of the consultation, the mother told Dr. Miller she was not going to choose abortion.
The defendants produced the report of Pediatric Geneticist Dr. David Hyman, who consulted with the parents and Dr. Miller on 14 August 1990 concerning the possibility of a chromosomal abnormality. Dr. Hyman's letter of 16 August 1990 confirmed that he and Dr. Miller discussed the clinical implications of the abnormality with the parents, and Dr. Miller explained the options available regarding continuing or terminating the pregnancy.
On 18 September 1996, the mother executed a second affidavit in which she claimed that Dr. Miller told her on 9 August 1990 that it was too late to have an abortion in Louisiana but that he would assist her in going to Kansas City where her only option would be to induce the child's birth and provide it no life support.
Attached to her second affidavit were reports of members of the Marcus Center at Emory University confirming that Kristina was born with extra chromosome material. According to the reports, while Kristina had neurologically based gross and fine motor and oral motor difficulties, she was described as a delightful little girl who was functioning at a level far better than had been expected, largely because of her mother's dedication and commitment. On tests of intellectual development, Kristina scored at the top of the low average range. Recommendations included speech and language therapy, an occupational therapy evaluation and ongoing therapy to address visual spatial difficulties and fine motor activity.

CLERICAL ERROR
We note on our own motion that the trial court's judgment of 3 October 1996 contains three clerical errors. In granting the motions for summary judgment with respect to the wrongful life claim, the judgment refers to "the `Wrongful Life' claims by the Plaintiffs, Pearl Ann Davis and Wayne Davis, individually ..." The parents made no wrongful life claim individually, but only on behalf of Kristina. Likewise, in denying the motions for summary judgment with respect to the wrongful birth claim, the judgment refers to denial of "the `Wrongful Birth' claims by the Plaintiffs ... on behalf of their minor child, Kristina Davis." No wrongful birth claim was made on Kristina's behalf.
In order to conform the judgment below to the pleadings and the evidence, we therefore correct these clerical errors and amend the judgment to read in pertinent part:
It is ordered that the Motions for Summary Judgment, on behalf of Defendants, The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, Dr. Joseph M. Miller, Jr., Dr. Yuan S. Kao, and John Van Brunt, with respect to the "Wrongful Life" claim by Pearl Ann Davis and Wayne Davis on behalf of their minor child, Kristina Davis, are hereby granted.
It is further ordered that there be judgment rendered in favor of the Defendants, The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, Dr. Joseph M. Miller, Jr., Dr. Yuan S. Kao, and John Van Brunt, with respect to the "Wrongful Life" claims *1033 of the plaintiffs, Pearl Ann Davis and Wayne Davis, on behalf of their minor child, Kristina Davis.
It is ordered that the Motions for Summary Judgment, with respect to the "Wrongful Birth" claims by the plaintiffs, Pearl Ann Davis and Wayne Davis, individually, are hereby denied.

PROPRIETY OF PARTIAL SUMMARY JUDGMENT AS A PROCEDURAL DEVICE
Appellants contend that the partial summary judgments entered below are procedurally defective under Pape v. ODECO, Inc., 93-1005 (La.App. 4 Cir. 9/21/94); 643 So.2d 229, which held that partial summary judgment may not be utilized to dispose of one issue in a case where no party is dismissed and other theories of recovery remain. We reject this argument for two reasons.
The judgment is proper under Pape's rationale since the judgment disposes of Kristina's entire claim. Further, Act 483 of 1997 amended the law of partial summary judgment by adding new paragraph A(B)(1) to La.C.C.P. art.1915, providing in pertinent part:
When a court renders a ... partial summary judgment ... as to one or more but less than all of the claims, ... issues, theories, or parties, ... the judgment shall not constitute a final judgment[1] unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
The Louisiana Supreme Court indicated its intention to apply Act 483 retroactively in Kaufmann v. Fleet Tire Service of Louisiana, Inc., 97-1428 (La.9/5/97); 699 So.2d 75.
We find that this act expanded the scope of partial summary judgment to make it available to dispose of one or more issues or theories of recovery. We therefore find no procedural error in the trial court's judgment dismissing only the wrongful life claim.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180, 1182.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion requires him only to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323, 326.
The amended article 966 substantially changes the law of summary judgment. Under the prior jurisprudence, summary judgment was not favored and was to be used *1034 only cautiously and sparingly. The pleadings and supporting documents of the mover were to be strictly scrutinized by the court, while the documents submitted by the party in opposition were to be treated indulgently. Any doubt was to be resolved against granting summary judgment, and in favor of trial on the merits. Sassone v. Elder, 626 So.2d 345 (La.1993). The jurisprudential presumption against granting the summary judgment was legislatively overruled by La.C.C.P. art. 966 as amended. The supporting documentation submitted by the parties is to be scrutinized equally and the overriding presumption in favor of trial has been deleted. Once the motion for summary judgment has been properly supported by mover, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to La.C.C.P. art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed.Rule Civ.Proc. 56(c). Hayes v. Autin, 96-287 (La. App. 3 Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. The summary judgment law was amended by La.Acts No. 483 of 1997 to incorporate the Hayes analysis. La.C.C.P. art. 1915(C)4.
In construing the federal summary judgment rule, the United States Supreme Court held that summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a defendant in an ordinary civil case moves for summary judgment or a directed verdict based on the lack of proof of a material fact, the judge must ask himself whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Id. The Anderson court further held that the mere existence of a scintilla of evidence on the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for that party. Berzas v. OXY USA, Inc., 29,835 (La.App. 2 Cir. 9/24/97); 699 So.2d 1149, 1152-53; Martello v. State Farm Fire and Cas. Co., 96 2375 (La.App. 1 Cir. 11/7/97); 702 So.2d 1179, 1183-84.
The 1997 amendments to the La. C.C.P. art. 966 have been applied retroactively to a case decided in the Court of Appeal prior to enactment of the amendments. Kaufmann v. Fleet Tire Service of La., Inc., supra.

ANALYSIS
We begin by defining what this case is not. It is not an abortion rights case, for we are not called upon to expand or to restrict Louisiana's comprehension of the conditions under which abortion is legal. It is not a prenatal injury case; there is no allegation that anything the defendants did or failed to do caused or contributed in the slightest way to the T9MS condition that afflicts Kristina. In weighing whether Kristina should recover and to what degree she should be compensated, it is clear that her alternatives are life with T9MS or no life at all. For genetic reasons having nothing to do with these defendants, the alternative of "normal" life without T9MS is not and never was available to Kristina. The essence of Kristina's wrongful life claim is that she should be compensated for having to endure life in her afflicted condition. Pitre v. Opelousas General Hosp., 530 So.2d 1151, 1154 (La.1988). Although appellants and appellees herein cite dicta in Pitre, we find that its holding does not provide the solution to the issue of whether the trial court was correct in dismissing Kristina's wrongful life claim on summary judgment. Unlike the instant case, in Pitre, the child was not yet conceived when the physician allegedly breached his duty. Further, the doctor in Pitre was exercising his diligence and care in helping the parents to avoid conception of a child. Kristina's conception, to the contrary, was welcomed by her parents, whose concern about the possibility of birth defects was expressed to the defendant doctors only after conception, when the mother was in her second trimester of gestation. Because of these distinguishing factors, we do not find Pitre to be controlling.
We are troubled by the philosophical conundrum flowing from Kristina's apparent suggestion that somehow she would have been advantaged had she not been born. This begs the question of how a person who never existed is advantaged, and, significantly *1035 for duty/risk analysis, the measure of such advantage. While the question of whether Louisiana recognizes a cause of action for wrongful life has been the subject of some academic debate,[2] the record below makes it unnecessary for us to address that weighty issue, fraught with philosophical implications, and we resist the temptation to do so. The gravamen of Kristina's wrongful life claim is that had her parents been advised in the 16th through 19th week of gestation, they would have aborted her, but that this option was unavailable in Louisiana in the 22nd or 23rd week.
The operative statute is La.R.S. 40:1299.35.4(A), which provides:
No physician shall perform or induce an abortion after the time when the unborn child, in the best medical judgment of the attending physician, is viable unless the operation is necessary to prevent the death or to preserve the health of the mother.
A fetus is viable under La.R.S. 40:1299.35.1(3) when it is potentially able to live outside of the womb of the mother upon premature birth whether resulting from natural causes or an abortion, or otherwise, and whether that potentiality exists in part due to the provision or availability of natural or artificial life-support systems.
Dr. Miller's deposition testimony, which is the only expert medical opinion offered in the record, places viability at the 26th or 27th week of gestation. The mother's conclusory statement that her child was viable at 22 or 23 weeks does not constitute the contrary expert opinion required to put this medical fact at issue. The record is devoid of any evidence tending to show that the mother's attending physician or, indeed, any other licensed health care provider in this community, subscribed to her lay view.
In Roberts v. Benoit, 605 So.2d 1032 (La. 1991), the Louisiana supreme court held that in order to prevail on a negligence claim a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element.) To meet the cause-in-fact element, a plaintiff must prove that the conduct was a necessary antecedent of the accident, that is, but for the defendant's conduct, the incident probably would not have occurred.
Thus, under the facts of record, we find that the defendants have sustained their burden under the new summary judgment law, and have established that their actions were not the cause in fact of the parents' decision not to abort Kristina. Defendants offered uncontroverted evidence that the option of an abortion in Louisiana was just as available or unavailable to the parents at 23 weeks as it was at 16 weeks. The parents, on behalf of Kristina, have not provided contrary evidence as required under the new law of summary judgment.

CONCLUSION AND DECREE
We conclude that defendants sustained their burden of offering uncontroverted evidence that no genuine issue of fact material to the question of whether their alleged delay in notifying the parents of the possibility that Kristina would be born with a birth defect caused the parents to choose to continue the pregnancy. Because appellants failed to produce evidence to the contrary, we conclude that the delay, if any, was immaterial to the parents' decision not to abort Kristina and was not a cause in fact of Kristina's allegedly wrongful life. The judgment below, as amended hereinabove, is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.
LANDRIEU, J., concurs.
*1036 BYRNES, J., dissents.
ARMSTRONG, J., dissents for the reasons assigned by BYRNES, J.
LANDRIEU, Judge, concurring.
Although I concur in the result reached by the majority and agree with its rationale, I also find that the plaintiffs have not stated a cause of action on behalf of their minor child, Kristina.
The state legislature has repeatedly stated public policy to be against abortion, except in certain limited circumstances. Although its efforts to criminalize abortion, except in narrow circumstances, have thus far been found unconstitutional, the statutes have not been repealed and the policy remains in effect. While that policy might be meaningless with respect to unconstitutional criminal statutes restricting abortion, it must be considered when determining civil liability for tortious conduct under La. Civ.Code art. 2315.
What we have in this case is a civil claim in damages for not having been aborted. In Pitre v. Opelousas General Hosp., 530 So.2d 1151 (La.1988), the Louisiana Supreme Court rejected "a categorical denial of any duty on the part of a physician to protect an unconceived child from being born with a birth defect" (emphasis added). I know of no State policy either for or against conception, but there is State policy against abortion because of a potential birth defect.
Because Kristina's claim rests solely on her contention that she was deprived of being aborted, and abortion, under her circumstances, would have been contrary to the policy of this state, I would find that she does not have a cause of action. To hold otherwise would permit every child born with a genetic birth defect, discoverable before birth, to sue his parents for not aborting him. The very idea is offensive. The law cannot redress every claimed inequity, and it should not attempt to do so.
BYRNES, Judge, dissenting.
Pearl Davis filed an affidavit stating that she was told by Dr. Miller that her pregnancy was too far advanced to permit an abortion under Louisiana law. If Dr. Miller did in fact give Mrs. Davis this alleged advice, the fact that it may have been erroneous as a matter of law does not mean that Mrs. Davis was not entitled to rely on this advice to the extent that as a layman she could be expected to treat it as medical advice. This clearly creates a genuine issue of material fact under the summary judgment law as it existed prior to the enactment of Act 483 of 1997. Moreover, even if we were to retroactively apply the amendments to LSA-C.C.P. art. 966 adding new paragraph C(2), the moving parties defendant in this case have failed to "point out that there is an absence of factual support for one of the elements essential to the adverse party's claim, action, or defense." LSA-C.C.P. art. 966 C(2) as amended by Act 483 of 1997. Mrs. Davis' affidavit should not be brushed aside as a mere allegation or conclusion. Mrs. Davis is entitled to have her opportunity to have her credibility tested at a trial on the merits. The nature of the advice given her by her doctors is the substance of her claim. How else is she to be expected to prove what advice was given to her other than through her own testimony. Medical advice is commonly given verbally. The fact that Mrs. Davis does not have documentary evidence to support her testimony should not deprive her of the opportunity of proving with her own testimony an allegation that would not normally be expected to have documentary support. It just means that in the absence of other corroborating evidence her credibility will have to be that much more convincing where she bears the burden of proof and other witnesses may contradict her story.
I would reverse the dismissal of the "wrongful life" claim, and remand for further proceedings. Therefore, I respectfully dissent.
NOTES
[1] In light of the Act, it may be more appropriate technically to convert these proceedings to a writ application. We see no advantage to be gained by such a conversion, which can be made, if deemed necessary, by the Louisiana Supreme Court. See Douglass v. Alton Ochsner Medical Foundation, 96-2825 (La.6/13/97); 695 So.2d 953.
[2] See, Rethinking Wrongful Life: Bridging the Boundary Between Tort and Family Law, 67 Tul. L.Rev.397 (1992); Comment, The Wrongful Life ClaimThe Legal Dilemma of Existence Versus Nonexistence: "To Be or Not To Be", 64 Tul. L.Rev. 895 (1990).