JjTERRI F. LOVE, Judge.
This appeal arises from a claim filed by plaintiffs, Deborah and Leon Descant, against Tulane Medical Center Hospital and Clinic and Dr. Eduardo Herrera, alleging that their baby was negligently delivered, resulting in irreversible brain damage. After the trial court directed a verdict in favor of Tulane Medical Center Hospital and Clinic, the jury rendered a verdict in favor of Dr. Herrera.' ■ This Court reversed the trial court’s directed verdict and remanded the case. Plaintiffs filed a Motion for Summary Judgment on their Petition to Annul the final judgment rendered in favor of Dr. Herrera. The trial court granted plaintiffs’ Motion for Summary Judgment, annulling the final judgment. It is from this judgment that Dr. Herrera appeals.
*790 FACTS AND PROCEDURAL HISTORY
On December 11, 1991, plaintiffs, Deborah Descant, wife oPand Leon J. Descant, Jr., Individually and as Parents and Administrators of the Estate of Their Minor Child (“Descants”), filed a medical malpractice action against Eduardo Herrera, M.D. (“Dr.Herrera”) and The Administrators of the Tulane Educational |2Fund, d/b/a Tulane Medical Center Hospital and Clinic (“TMC”). The Descants aver that during the attempted vaginal delivery of their daughter, the baby’s shoulders became stuck in the birth canal for fifteen (15) minutes, which caused the baby to become asphyxiated, resulting in irreversible brain damage.
Dr. Herrera avers that when Mrs. Descant presented to him on February 23, 1989, she was referred to TMC for a hysterectomy, but pre-operative tests revealed that she was pregnant. Dr. Herrera asserts that the Descants were informed that the pregnancy would be high risk due to: Mrs. Descant’s age of thirty-five (35) years; she was overweight and diagnosed with diabetes. Dr. Herrera contends that throughout her pregnancy, Mrs. Descant obtained several ultrasounds, which provided estimated fetal weights. The estimated fetal weights, based on the ultrasound at thirty-five (35) weeks, were two thousand six hundred sixty-five (2,665) grams and three thousand five hundred twenty-six (3,526) grams, or about seven (7) pounds five (5) ounces. Dr. Herrera further avers that an amniocentesis performed during these ultrasounds indicated immature fetal lung development at that time. Because Mrs. Descant was at thirty-seven and one-half (37/é) weeks'gestation and having irregular contractions, she was admitted and at 7:00 a.m. she was scheduled for the induction of labor and vaginal delivery.
Dr. Herrera asserts that in light of Mrs. Descant’s pregnancy being classified as high-risk pregnancy, his original intent was to induce delivery at thirty-eight (38) weeks. Dr. Herrera avers that the Descants were informed of the risks of both vaginal and cesarean section (“C-section”) delivery and Mrs. Descant’s written consent was obtained for both procedures. During the attempted vaginal delivery, the baby became asphyxiated when her shoulders became stuck in the birth canal for fifteen (15) minutes, resulting in permanent brain damage.
|s Trial on the Merits
The Descants filed a medical malpractice claim against Dr. Herrera, and TMC, alleging that defendants were negligent in their care and treatment of Mrs. Descant when she was pregnant with and during the birth of her daughter. Plaintiffs aver that because Dr. Herrera did not obtain or attempt to obtain an accurate estimated fetal weight of Mrs. Descant’s baby, Dr. Herrera failed to obtain Mrs. Descant’s “informed consent” to a vaginal delivery.
At the trial on the merits, Dr. Herrera’s initial testimony was that in 1989 the standard of care for obstetricians required an estimation of the weight of the fetus before delivery. He further testified that one of the reasons doctors were required, by the standard of care, to estimate the weight of the fetus before delivery was so that patients could be counseled about the pros and cons of vaginal delivery as opposed to a C-section. Further, it was Dr. Herrera’s testimony that estimation of fetal weight is to ensure that there is an informed recommendation to the patient as to the method of delivery.
The record establishes that on November 1, 1989, Dr. Flynn, Dr. Herrera’s senior resident, documented Mrs. Descant’s estimated fetal weight of nine and three quarter (9%) pounds, which was charted as *791 a labor and delivery note. However, according to Dr. Herrera’s testimony, upon review of Mrs. Descant’s' charts, including her obstetrical chart and clinic record at TMC, he testified that he personally never made similar notations as to the estimated fetal weight before Mrs.- Descant’s delivery. Dr. Herrera testified that if he obtained or calculated the estimated fetal weight to be four thousand five hundred (4, 500) grams or greater, he would have instructed Mrs. Descant to have a C-section. Although the record establishes, that a nine and three quarter (9%) pound baby would be less than four [ ¿thousand five hundred (4,500) grams by seventy-eight (78) grams and that Dr. Flynn measured the fetal fundal height and determined that it was forty-five (45) centimeters on November 2nd, Dr. Herrera testified he was not aware that such a measurement was charted in Mrs. Descant’s chart.
During the jury trial, Dr. Herrera further testified that he ordered an ultrasound for estimated fetal weight and for amniocentesis, and although the TMC Radiology Department performed the- amniocentesis part, they failed to perform the ultrasound. The November 1st report gave Dr. Herrera an estimate of a fetus that was seventeen (17) week-old. Dr. Herrera further testified that when he recognized that the estimated fetal weight was an obvious mistake[1], he contacted the TMC Radiology Department to obtain the correct estimated fetal weight on Mrs. Descant’s fetus, but the department was unable to provide such information because only the amniocentesis was performed.
Although he did not have an ultrasound estimating the fetal weight for Mrs. Descant on November 2nd, Dr. Herrera also testified that he examined Mrs. Descant at the time the supra pubic amniocentesis was performed and relying on the previous ultrasound and his examination, he testified that his examination yielded that the baby was-less than nine pounds.
After the plaintiffs presented their case in chief, the trial court granted defendant, TMC’s, Motion for a Directed Verdict. In granting the defendant’s Motion for a Directed Verdict, the court opined:
“Even though there was testimony that perhaps certain departments did not do something that it should have done, there is no testimony or proof'of evidence ^introduced to prove that the failure to’ do something was the causing factor or contributing to the damages.”
The plaintiffs’ case against Dr. Herrera was submitted to the jury, which rendered a verdict in his favor.
On appeal, this Court reversed the trial court’s directed verdict in favor of TMC and affirmed the trial court’s judgment, in favor of Dr. Herrera. In Descant v. Administrators of Tulane Educ. Fund, 95-2127 (La.App. 4 Cir. 1/21/98), 706 So.2d 618, 627-628, this court opined that Dr. Herrera ordered an ultrasound fetal weight measurement and an ultrasound amniocentesis; but TMC’s Radiology Department failed to perform the ultrasound for estimated fetal weight. This Court further opined that review of plaintiffs’ evidence yielded that had Dr. Herrera been provided with accurate fetal weight measurements, he would have performed a C-section, which would have avoided the .tragedy, which occurred in this case.
*792 After careful review of the record, this court held:
fair and reasonable minded persons could conclude that TMC Hospital and Clinic was negligent and that its negligence was a cause in fact of Edith Descant’s injuries. For that reason, the trial court’s grant of a directed verdict at the close of plaintiffs case was an error.
Id. at p. 14, 706 So.2d at 627.
Based upon Dr. Herrera’s trial testimony, this Court reversed the trial court’s granting of a directed verdict in favor of TMC and remanded plaintiffs’ claims against TMC for trial. TMC filed an application for a Writ of Certiorari with the Louisiana Supreme Court, which was denied. Descant v. Administrators of Tulane Educ. Fund, 98-0467 (La.4/3/98), 717 So.2d 1131.

On Remand; Post-Trial Deposition

| (¡On remand, pre-trial discovery was conducted with respect to the plaintiffs’ remaining claims against TMC. The deposition of Dr. Herrera was noticed and taken on April 27, 2000. At the deposition, TMC questioned Dr. Herrera about the November 1,1989 ultrasound. In his post-trial deposition, Dr. Herrera provided testimony that differed from his trial testimony. Dr. Herrera testified that he did not request that an ultrasound for estimating fetal weight be performed on November 1, 1989, at any time prior to, or at the same time as the amniocentesis was being performed on November 1, 1989. Dr. Herrera also testified that he was aware that during the amniocentesis, an ultrasound was not being performed in order to obtain an estimated fetal weight; and he never requested an ultrasound to obtain any of the measurements that relate to head circumference, abdominal circumference, femoral length or biparietal diameter.
During his deposition, Dr. Herrera also testified that on November 2, 1989, before the actual delivery of Mrs. Descant began, he could have requested that the Radiology Department perform an ultrasound in order to estimate fetal weight, but he did not. Dr. Herrera asserts in his post-trial deposition, that on November 1, 1989, an amniocentesis was ordered to determine the status of fetal lung development. Dr. Herrera asserts that the ultrasound performed on November 1, 1989, was not a standard ultrasound to determine estimated fetal weight and an estimated fetal weight was not ordered. Dr. Herrera notified TMC’s ultrasound department that the estimated fetal weight that was provided was not for Mrs. Descant, but rather for a seventeen (17) week-old fetus. The department rendered an amended and corrected report for Mrs. Descant, which only described localization of amniotic fluid for amniocentesis. Dr. Herrera asserts that no ^estimated fetal weight was provided since the ultrasound was not ordered for that purpose.
Based on the deposition testimony of Dr. Herrera in which plaintiffs aver that he recanted his trial testimony, plaintiffs filed a petition to annul the judgment in favor of Dr. Herrera, pursuant to La. C.C.P. art. 2004. The Descants also filed a Motion for Summary Judgment on the Petition to Annul. Dr. Herrera filed a Preemptory Exception of No Cause of Action, which asserted that plaintiffs’ petition to annul the final judgment failed to adequately allege fraud or ill practices and lacked factual support for the plaintiffs’ conclusory allegations. Defendants also filed a Motion for Summary Judgment.
The trial court denied the defendant’s exception and after a hearing on the matter, the trial court granted plaintiffs’ Motion for Summary Judgment and annulled the judgment rendered in favor of Dr. *793 Herrera. The defendant filed a Motion for a New Trial, which the trial court denied. It is from the trial court’s granting of plaintiffs’ Motion for Summary Judgment annulling the final judgment in favor of Dr. Herrera and denying defendant’s Motion for Summary Judgment and Motion for New Trial that Dr. Herrera appeals.
LEGAL ANALYSIS
On appeal from the trial court’s judgment granting the Descants’ Motion for Summary Judgment and denying Dr. Herrera’s Motion for Summary Judgment, defendant, Dr. Herrera, avers that the trial court erred in granting plaintiffs’ Motion for Summary Judgment, which annulled the final judgment rendered against Dr. Herrera and the trial court erred in denying defendant’s Motion' for Summary Judgment.
[sThe Descants contend that there are no genuine issues of material fact insofar as the inconsistent statements made by Dr. Herrera deprived plaintiffs of their legal right to a fair trial and enforcement of a judgment rendered in favor of Dr. Herrera which was based on these inconsistencies would be unconscionable and inequitable. •
In seeking an annulment of the jury’s judgment rendered in favor of Dr. Herrera, the Descants assert that Dr. Herrera testified at trial that he ordered an ultrasound for the estimation' of fetal weight and that TMC failed to provide him with one. The Descants further contend that Dr. Herrera testified that had TMC provided him with an accurate estimated fetal weight, he would have instructed Mrs. Descant to proceed with a C-section. In his trial testimony, plaintiffs aver that Dr. Herrera indicated that in the absence of a November 1st ultrasound, he utilized Mrs. Descant’s previous ultrasound readings and his examination of her during the supra pubic amniocentesis to calculate the estimated weight of the fetus. In his post-trial deposition, however, Dr. Herrera offered conflicting testimony, asserting that at no point did he order an ultrasound be performed on Mrs. Descant to calculate the estimated fetal weight of her baby prior to delivery.

STANDARD OF REVIEW

In determining whether the trial court erred in granting plaintiffs’ Motion for Summary Judgment on the petition to annul, we must discern whether genuine issues of material fact exist. The standard for reviewing the trial court’s grant or denial of a Motion for Summary Judgment requires de novo review. Appellate courts are to review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Potter v. First Federal Savings & Loan Association of Scotlandville et al, 615 So.2d 318, 325 (La.1993). The Motion for Summary Judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter that is before the court on the Motion for Summary Judgment, the movant’s burden on the motion requires him only to point out to the court that there is an absence of factual support for one or more eleménts essential to the adverse party’s claims, action or defense. Davis v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 97-0382, p. 7 (La.App. 4 Cir. 3/18/98), 709 So.2d 1030, 1033. There is no genuine issue of material fact when the adverse party fails to produce factual support suffi- *794 dent to establish that he will be able to satisfy his evidentiary burden of proof at trial. Id. at p. 7, 709 So.2d at 1033; La. C.C.P. art. 966 C(2).
The Descants were required to carry their burden of proof that there exists no genuine issue as to material fact and that they are entitled to judgment as a matter of law on the petition to annul the judgment. Jurisprudence establishes two criteria in determining whether a judgment has been obtained by actionable fraud or ill practices pursuant to La.C.C.P. art.2004:(l) the circumstances under which the judgment was rendered shows the deprivation of legal rights of the litigant who seeks relief, and (2) the enforcement of the judgment would be unconscionable and inequitable. Smith v. Cajun Insulation, Inc., 392 So .2d 398, 401-402 (La.1980); Johnson v. Jones-Journet, 320 So.2d 533 (La.1975). Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense | ^constitutes a deprivation of his legal rights. Kem Search, Inc., v. Sheffield, 434 So.2d 1067, 1070 (La.1983).
Although La. C.C.P. art.2004, provides in part that the trial court has discretion to set aside the previous judgments when a final judgment was obtained by fraud or ill practices, the application of La. C.C.P. art.2004 is not limited to eases of actual fraud or intentional wrongdoing. Jurisprudence holds that La.C.C.P. art. 2004 is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Kem Search, Inc., v. Sheffield, 434 So.2d at 1070.
Upon careful review of the record, we find that the plaintiffs’ assertions are correct in that these inconsistencies in Dr. Herrera’s testimony exist. Defendant disputes that he gave false testimony at trial, but avers that any inconsistent statements that were made which were contrary to the post-trial deposition, were “in error.” Although the evidence presented at the hearing on the Motion for Summary Judgment established that Dr. Herrera made several statements during his post-trial deposition which were inconsistent to his testimony during the original trial and the post-trial deposition, we acknowledge that “perjury is not a ground for vacating the judgment where the judgment does not rest upon perjured testimony, as where it related to an immaterial matter,” Belle Pass Terminal, Inc., v. Jolin, Inc., 2001-0149, p. 7 (La.10/16/01), 800 So.2d at 762, 767, citing Spence v. Spence, 158 La. 961, 105 So. 28, 30 (La.1926).
In, Belle, 2001-0149, p. 6, 800 So.2d at 766, the Louisiana Supreme Court established the standard in reviewing a decision of the trial court on a petition for |T1nullity. The issue for the reviewing court is not whether the trial court was right or wrong, but whether the trial court’s conclusions were reasonable. Id. at 766. When reviewing assignments of error alleging that the trial court erred in annulling a final judgment, based on fraud or ill practices, the trial court is permitted discretion and reviewing courts will defer to a trial judge’s reasonable decision on a question or matter properly within his discretion. Kem Search, Inc., v. Shefield, 434 So.2d at 1071.
Plaintiffs aver that based upon the untruthful testimony of the defendant, Dr. Herrera, the trial court was reasonable in concluding that the Descants were deprived of the legal right to have their claims tried and were therefore, deprived *795 of a fair trial. Defendant, Dr. Herrera, asserts that the uncontroverted testimony and evidence established that Dr. Herrera’s trial testimony regarding the November 1, 1989 ultrasound did not prevent plaintiffs from presenting their claims. Defendant contends that the TMC Radiology Department Consultation Request form for the related ultrasound confirms that ultrasound guidance was only used to locate a pocket of amniotic fluid in which to place the needle, and Dr. Herrera was never questioned about the inconsistency during his testimony at the trial on the merits. Dr. Herrera further - asserts that any discrepancies between his trial testimony and post-trial deposition testimony are immaterial and in no way deprive plaintiffs of any legal, right, claim or a fair and impartial trial. However, plaintiffs assert that Dr. Herrera’s trial testimony, which provided that he sought to obtain a fetal weight determination by ultrasound on the eve of delivery supported his defense that he exercised reasonable care under the circumstances in delivering the Descants’ daughter. Dr. Herrera further testified that he attempted to obtain the fetal weight estimation, but it was TMC which failed to provide. him with this 1 ^information and had TMC provided him with the correct fetal weight he would have delivered Mrs. Descant by C-Section.
In Belle, -2001-0149, p. 6, 800 So.2d at 767, the Louisiana Supreme Court opined that a legal right may defined as
circumstances where the litigant appears in court but is prevented from participating in a fair and impartial proceeding due to ill practices of another party.
Id. at p. 6, 800 So.2d at 767.
After evaluating the inconsistent statements made by Dr. Herrera in the original trial, we find that there is no genuine issue of material fact that the inconsistent statements were made; however, we find that the materiality of such inconsistent statements create genuine issues of material fact. The issue presented to the jury was whether Dr. Herrera exercised reasonable care in connection with his handling of Mrs. Descant’s labor and delivery. Dr. Herrera testified that he requested the estimated fetal weight, which TMC failed to obtain. He further testified that had the Radiology Department given him the estimated fetal weight of Mrs. Descant, which he requested on November 1st, he would have recommended to Mrs. Descant that they proceed with C-section delivery of her baby. During the first trial, the Descants asserted that Dr. Herrera failed to use reasonable care .and diligence in anticipating and ascertaining the fetus’ weight. Dr. Herrera’s testimony was that he had in fact asked the TMC Radiology Department to give him a fetal weight estimate by ultrasound, the “gold standard,” the day before Mrs. Descant’s delivery. He further testified that the Radiology Department gave him incorrect results.
After a de novo review of the record, we find that, in light of Dr. Herrera’s trial testimony which exonerated his negligence and placed negligence on TMC ]1sand the inconsistent statements in his post-trial testimony, genuine issues of material facts exist as to whether plaintiffs were deprived of some legal right during the trial on the merits and whether the enforcement of the judgment rendered in favor of Dr. Herrera would be unconscionable and inequitable. ■ Accordingly, in considering whether the trial court erred in granting the Descants’ Motion for Summary Judgment and annulling the final judgment rendered in favor of Dr. Herrera, we find that genuine issues of material fact exist as to whether the inconsistent statements were material to the plaintiffs’ assertion of their legal right.

*796
CONCLUSION

Therefore, the trial court’s granting of plaintiffs’ Motion for Summary Judgment is reversed, the final judgment in favor of Dr. Herrera is reinstated and the case is remanded for a trial on the merits of the Petition to Annul.
REVERSED; JUDGMENT REINSTATED; REMANDED.
McKAY, J., concurs in the result.
PER CURIAM
Dr. Herrera asserts that his peremptory exception of no cause of action should be granted based on statements made by opposing counsel in oral arguments before this Court. This Court’s scope of review is limited to assignments of errors included in briefs filed by either party with the Court. We cannot review evidence that is not part of the record, as established in the trial court. Accordingly, defendant’s peremptory exception of no cause of action is denied.

. The record establishes that an estimated fetal weight ultrasound was provided to Dr. Herrera; however, the reading on the ultrasound was detected by Dr. Herrera as a seventeen (17) week-old fetus and therefore belonged to another patient, as Mrs. Descant's fetus was 37¡á weeks old.