LOMBARD, Judge.
 

 | T This appeal filed by Tuff-N-Rumble Management d/b/a Tuff City Records (Tuff City) is from the judgment of the trial court granting the plaintiffs’ motion for partial summary judgment. After
 
 de novo
 
 review, the judgment of the trial court is affirmed.
 

 Relevant Facts and Procedural History
 

 The matter arises out of a copyright dispute over “It Ain’t My Fault,” a song co-written in 1964 by two legendary New Orleans musicians, Mr. Joseph “Smokey” Johnson and Dr.
 
 [1]
 
 Wardell Quezergue a/k/a the “Creole Beethoven.” The song was subsequently incorporated into work by a rap artist in the 1990s without payment to the musicians and, as a result, the musicians filed a federal lawsuit in 1999 against Tuff City, as well as Vyshon Miller a/k/a Silkk the Shocker, No Limit of New Orleans, LLC, Big P Music, LLC, No Limit Productions, LLC, and Boutit, Inc. (collectively referred to as “No Limit”), alleging nonpayment for the use and ownership of their song. In addition, the musicians alleged copyright ^infringement of their song in three new songs by Silkk the Shocker. Tuff City filed its own cross-claim against No Limit for copyright infringement of the song. The federal court dismissed the musicians’ claims against Tuff City on summary judgment based on its finding that pursuant to contracts dated June 17, 1997, and February 12, 1998, Tuff City was contractually 50% owner of the song and co-owners of a copyright cannot sue each other.
 

 Subsequently, pursuant to a settlement agreement between Tuff City and No Limits, it was agreed that (1) No Limit would credit Johnson and Quezergue as songwriters on the new songs; (2) attribute 50% of the copyright in and to the new songs to the copyright of the original Johnson and Quezergue song; (3) pay Tuff City 50% of all future income and royalties stemming from the new songs, from which Tuff City would be responsible for making payments to Quezergue and Johnson; (4) pay Tuff City an agreed upon amount of money from which Tuff City will be responsible for payments to Quezergue and Johnson; and (5) make payment to Tuff City of an agreed upon amount of money for all previous exploitation of the new songs from which Tuff City will be responsible to make payments to Quezergue and Johnson. Pursuant to this settlement agreement, the federal lawsuit was dismissed.
 

 Tuff City attempted to pay the musicians only a minimal amount of the proceeds from their song, alleging a deduction of $99,546.21 in legal fees from the musicians’ earnings on their song. Tuff City offered no documentation in support of this deduction except a half page computer printout of fees purportedly accrued by a law firm. Accordingly, the musicians filed the instant lawsuit on May 1, 2002, in the Civil District Court of Orleans Parish,
 
 *995
 
 naming as defendants Tuff-N-Rumble Management, Inc., d/b/a Tuff City Records d/b/a Night Train Records and Boutit, Inc, d/b/a No Limit Records, Priority Records, LLC, and Sony Music Entertainment, Inc. The musicians allege that Priority Records, the exclusive | ¡¡distributor for No Limits Records, has sold more than three million records and CDs of the plaintiffs’ song “It Ain’t My Fault” and, additionally, that pursuant to a licensing agreement with No Limit, Sony included the musicians’ song on Mariah Carey’s Rainbow CD which has sold in excess of 3 million units. After the district court dismissed some of the claims, three claims remain in this lawsuit: (1) a breach of contract claim on behalf of Mr. Johnson, alleging that Tuff City breached his contract by failing to provide timely accountings relative to his songs, for failing to pay him royalties for the use of his songs and, without contractual basis, for withholding monies due to Mr. Johnson for legal fees incurred by Tuff City; (2) a breach of contract claim on behalf of Dr. Quezergue; and (3) an unjust enrichment claim on behalf of both musicians, alleging that No Limit, Sony, and Priority Records were unjustly enriched by the inclusion of the musicians’ song on the Mariah Carey CD without payment to the musicians.
 

 In July 2004, the musicians issued their first discovery requests for documents pertinent to their claims. In October 2004, the musicians filed a motion to compel Tuff City to respond to pertinent discovery requests. The initial motion hearing date was continued, but on April 14, 2005, the musicians’ counsel sent a letter to Tuff City elaborating on the documentation sought through discovery, including a request for proof regarding the attorney fees that Tuff City claimed from the royalties due to the plaintiffs. On June 1, 2006, Tuff City produced a single half page computer printout with a column of legal fees amounting to $99,546.21 which Tuff City alleges were accrued on behalf of the musicians. This documentation of the legal fees purportedly expended on behalf of the musicians contained no explanation as to specific dates, attorneys billing information, services rendered, or other relevant data. Accordingly, at a hearing in June 2006 |4on the musicians’ motion to compel, the trial court ordered Tuff City to produce clarification and certification of the alleged attorney fees within 20 days. Tuff City failed to do so and, accordingly, on September 12, 2008, the musicians filed the instant Motion for Partial Summary Judgment on Attorney Fees.
 

 After a hearing in December 2008, the trial court granted partial summary judgment in favor of the musicians on January 5, 2009, finding that Tuff City failed to submit any credible evidence for the claimed attorneys’ fees. Tuff City filed a motion for reconsideration, submitting that after the December 2008 hearing evidence had been discovered “which Tuff City could not, without [sic]
 
 [2]
 
 due diligence, have obtained before the hearing.” Tuff City asserted that its in-house counsel responsible for locating any and all documents supporting Tuff City’s claim had abruptly left its employ in November 2006 and his replacement passed away from cancer in November 2008 as Tuff City was preparing its opposition to the musicians’ motion. In support of its motion for reconsideration, Tuff City attached the following documents: (1) Invoice # 19302
 
 *996
 
 from the law offices of Cobrin
 
 &
 
 Gittes dated January 1, 2000, showing a balance due of $6,069.64 for professional services rendered 12/01/99 through 12/31/99 for professional services (but with no notation as the subject matter of the services rendered); (2) Invoice # 19304 from the law offices of Cobrin & Gittes dated January 1, 2000, showing a balance due of $9,029.34 for professional services rendered 12/01/99 through 12/31/99 (again with no notation as to the subject matter of the services rendered); and (3) a Quick Books extract from the law office of Cobrin & Gittes listing invoice numbers and amounts for various accounts (again with no notation as to|sthe subject matter underlying the various invoices; (4) affidavit by the owner and President of Tuff City stating that these documents were only discovered in a cross-search of business records after the December 2008 hearing and that the documents were related to payments made by Tuff City to the law firm of Corbin & Gittes for the legal service of Oren J. Warshavsky in connection with the enforcement, defense and settlement of the pertinent copyright claims.
 

 Tuff City filed a supplemental memorandum in support of its motion for reconsideration with another affidavit from the owner and President of Tuff City stating that he had uncovered additional evidence of payments made by Tuff City to the law offices of Corbin & Gittes and attaching copies of 7 checks: (1) Check No. 1012, date October 13, 1198, in the amount of $1500.00 (but no notation referencing either a legal matter or invoice number); (2) Check No. 1037 dated October 30, 1998, in the amount of $2000.00 (but no notation referencing either a legal matter or invoice number); (3) Check No. 1072 dated November 23, 1998, in the amount of $500.00(but no notation referencing either a legal matter or invoice number); (4) Check No. 1086 dated December 2, 1998, in the amount of $500.00 (but no notation referencing either a legal matter or invoice number); (5) Check No. 1088 dated December 3, 1998, in the amount of $500.00 (but no notation referencing either a legal matter or invoice number); (6) Check No. 1124 dated December 29, 1998, in the amount of $1500.00 ((but no notation referencing either a legal matter or invoice number); and (7) Check No.
 
 2485
 
 dated December 29, 2001, in the amount of $15,000.00 (but no notation referencing either a legal matter or invoice number).
 

 After a hearing, the trial court denied Tuff City’s motion for reconsideration on March 13, 2009, reiterating its partial summary judgment on the issue of | ^attorneys’ fees and dismissing with prejudice all claims pertaining to whether the plaintiffs owed Tuff City attorney fees relative to the current action and the federal copyright infringement lawsuit. Tuff City appeals this judgment.
 

 Applicable Law
 

 Appellate courts review summary judgments
 
 de novo,
 
 using the same criteria applied by trial courts to determine whether summary judgment is appropriate.
 
 Reynolds v. Select Properties, Ltd.
 
 93-1480 (La.4/11/94), 634 So.2d 1180, 1182. Because summary judgment is favored in Louisiana, the rules regarding such judgments are liberally applied.
 
 Id.
 

 Summary judgment is appropriate when there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966 C(l). When, as in this case, the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the burden shifts to the nonmoving party to produce factual support sufficient to satisfy his evidentiary burden at trial. La.Code Civ. Proc. art.
 
 *997
 
 966(c)(2). The failure of the non-moving party to meet this shifting burden and produce evidence of a factual dispute mandates the granting of the motion.
 
 Davis v. Bd. Of Sup’rs of La. State Univ.
 
 97-0382, p. 8 (La. 4 Cir.App. 3/18/98), 709 So.2d 1030, 1034. Accordingly, an adverse party to a supported motion for summary judgment may not rest on the mere allegations but, rather, his response must set forth specific facts showing that there is a genuine issue of material fact for trial.
 
 Id.
 
 Specifically, similar to the federal standard, summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party.
 
 Id.
 
 (citing
 
 Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, when as in this case the motion is based on the lack |7of proof of a material fact, the court must ask itself whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.
 
 Id.
 
 at 8-9, 709 So.2d at 1034. Accordingly, the
 
 mere existence of a scintilla of evidence
 
 in support of the non-moving party’s position is insufficient; there must be evidence on which the jury could reasonably find for that party.
 
 Id.
 
 (citations omitted) (emphasis added).
 

 Discussion
 

 In their motion for partial summary judgment, the musicians assert that Tuff City is unable to prove that legal fees were paid on behalf of the musicians that may be deducted from the monies contractually owed to the plaintiffs or in accordance with the settlement agreement. Tuff City responds by arguing that it has produced sufficient evidence by affidavit and in the form of invoices, cancelled checks, the computer printout of accounts receivable, and a QuickBooks extract to satisfy its evidentiary burden at trial that it incurred attorney fees relative to the current and previous lawsuit.
 

 We have reviewed the documents submitted by Tuff City in opposition to the plaintiffs’ motion, as well as the documents submitted in support of its motion for reconsideration but find that Tuff City has failed to sustain its burden on motion for summary judgment. Tuff City claims it incurred legal expenses on behalf of the musicians but nothing in the computer printout, invoices, cancelled checks, or Quickbook extract submitted by Tuff City makes any reference to actions taken on behalf of the musicians in this case. Accordingly, “It Ain’t My Fault” if Tuff City’s documents are insufficient to sustain their burden on summary judgment. Moreover, Exhibit H attached to the musicians’ opposition to Tuff City’s motion for reconsideration, a copy of
 
 Tuff-N-Rumble Management, Inc. v. Sugarhill Music Publishing, Inc.,
 
 99 F.Supp.2d 450 (S.D.N.Y.2000), clearly | ^indicates that Tuff City was involved in at least one other legal action in the same time it is claiming legal fees were paid on behalf of the musicians. Moreover, even accepting
 
 arguendo
 
 that legal fees are deductible from the money owed to the musicians or that the meager and unreferenced documentation submitted by Tuff City, including the can-celled checks to the law firm totally $20,500.00, is evidence of payment for legal work done on behalf of Tuff City, the meager documentation submitted by Tuff City after 4 years of discovery requests is clearly insufficient to support a finding that Tuff City expended legal fees on behalf of these musicians which are deductible from the royalties due to the musicians for the use of their song. Moreover, in the initial lawsuit, the musicians were forced to find their own counsel to file suit to protect their song from use without payment and from copyright infringement and named Tuff City and others as defendants. Only then did Tuff City, claiming
 
 *998
 
 50% ownership of the song, file a cross-claim against No Limits, presumably to protect at least in part their own
 
 50%
 
 ownership. Thus, again accepting
 
 arguen-do
 
 that attorney fees expended on behalf of the musicians are deductible from the money owed to the musicians, there is no indication in the documents submitted by Tuff City or in the arguments made by Tuff City that any portion of the purported fees expended on behalf of the song were deducted from the proceeds collected by Tuff City’s for its 50% ownership of the song. Additionally, the musicians were dismissed from the federal lawsuit and were not parties to the settlement agreement even though the settlement agreement included a specific provision wherein Tuff City agreed to pay the musicians their portion of the royalties for the song. After four years of discovery requests, Tuff City has not come forward with evidence to support their claim of legal fees paid on behalf of and therefore deductible from the musicians’ ownership of their song. Moreover, lflTuff City concedes, in effect, that despite searching their own records for more than four years they have been unable to find anything other than a few generic invoices and checks that appear to have no connection with the musicians or song in this case. On the basis of this record, it is difficult to perceive any scenario wherein Tuff City could legitimately deduct the legal fees from the monies due to the musicians and, accordingly, because there is no genuine issue of material fact to be resolved as trial, partial summary judgment on this issue is appropriate. The issue of Tuff City’s fiduciary responsibility to the musicians is not before us and we cannot, of course, comment on the morality of a corporation choosing to withhold the substantial funds due to two elderly musicians who lost everything in Hurricane Katrina. We do note, however, that the circumstances of this case are very disturbing.
 

 Conclusion
 

 Tuff City failed to meet its burden on motion for partial summary judgment and, accordingly, we find that there is no genuine issue of material fact pertaining to the claimed attorney fees. Accordingly, the musicians’ motion for partial summary judgment is granted and the trial court judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Loyola University awarded an honorary doctorate in music to Mr. Quezergue for his commitment to public service and the arts.
 

 [2]
 

 . The court can only assume that the appellants meant to argue that, searching with due diligence, they could not have found the evidence before the hearing, although based upon the evidence submitted it appears that the document search was, in fact, done “without due diligence."